UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTY SNYDER, WENDY REILLEY and KYLE BALDASANO, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>FARNAM COMPANIES, INC.,<br>WELLMARK INTERNATIONAL, INC.,<br>CENTRAL LIFE SCIENCES, and<br>CENTRAL GARDEN & PET COMPANY,<br><br>      Defendants. | Civ. No. 10-1391<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

      This matter comes before the Court on Defendants Farnam Companies, Inc. ("Farnam"), and Wellmark International's ("Wellmark") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiffs' Amended Complaint ("Complaint") brings a putative class action on behalf of themselves and other purchasers and users of "spot on" flea and tick treatments

1

for dogs and cats manufactured by Defendants. Defendants manufacture various flea and tick control pesticide products ("Products") containing insecticides Permethrin, (S)-Methoprene, Pyriproxyfen, and Etonfenprox. (Compl. ¶ 5-6.) The Products are considered "spot on" flea and tick treatments because the pesticide is applied directly to one or more localized areas on the body of the pet. (*See* Compl., Ex. E.) On April 21, 2009, the Environmental Protection Agency ("EPA"), which regulates the safety of pesticides, issued a press release, reporting a "recent sharp increase in the number of incidents being reported from the use of spot-on pesticide products for flea and tick control for pets." (Compl., Ex. E.)

Plaintiffs allege that Defendants' Products are unsafe because they caused skin irritation and neurological problems for their pets. (Compl. ¶ 7.) Plaintiff Christy Snyder, a resident of Pennsylvania, alleges that on July 20, 2009, she purchased and used Farnam's Product on her dog, which she alleges led to her dog becoming lethargic, losing weight, and suffering hearing loss. (Compl. ¶¶ 40-43.) Plaintiff Wendy Reilley, a resident of New Jersey, alleges that on or about May 2009, she purchased and treated her dog with Farnam's Product, after which the dog "exhibited neurological problems." (Compl. ¶¶ 44-47.) Plaintiff Kyle Baldasano, a resident of California, alleges that on March 8, 2010, he treated his cat with Wellmark's Product, after which the cat became "very disoriented, sickly and generally showed abnormal behavior." (Compl. ¶¶ 48-49.)

Plaintiffs, on behalf of themselves and other purchasers of Defendants' products, bring the following causes of action: (1) breach of express warranty (Count One); (2)

2

breach of implied warranty of merchantability (Count Two); (3) unjust enrichment (Count Three); (4) violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count Four); and (5) violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") (Count Five). Specifically, Plaintiffs seek economic damages based upon the difference between the amount they paid for the product and the diminished (or nonexistent) value of the product as a result of it being unsafe to apply to their pets.[1]

## II. DISCUSSION

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[2] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542

---

[1] In addition to this action, multiple putative class actions have been filed against various other "spot on" flea and tick treatment manufacturers in this Court. The Court has issued parallel opinions on the pending motions to dismiss in the following flea and tick treatment cases: *Smith v. Merial*, Civ. No. 10-439; *McDonough v. Bayer Healthcare,* Civ. No. 10-442; *Arlandson v. Hartz Mountain Corp.*, Civ. No. 10-1050; and *Johansson v. Central Garden and Pet Company*, Civ. No. 10-6372.

[2] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

F.3d 59, 64 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

    **B.**    **Claims Against Defendants Central Life Sciences and Central Garden & Pet Company**

Defendants point out that Farnam does business as "Central Life Sciences," and that "Central Life Sciences is not a separate legal entity." (Defs.' Moving Br. at 5.) Therefore, the Court will properly treat Farnam and Central Life Sciences as a single Defendant ("Farnam"). Additionally, Defendants note that the Complaint contains no factual allegations as to actions by Farnam and Wellmark's parent company, Central Garden & Pet Company ("Central Garden"). A parent corporation cannot be held liable for the acts of its subsidiaries solely because of its ownership of those subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Since Plaintiffs have failed to allege any facts imposing liability on Central Garden, Plaintiffs' claims as against Central Garden are dismissed without prejudice. Plaintiffs' claims against Farnam and Wellmark remain.

### C.     Choice of Law Principles

Since Plaintiffs' claims are all based on state law, at the outset the Court must determine which law to apply to Plaintiffs' claims. New Jersey's choice of law rules apply, as a federal court sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 383 U.S. 487, 496 (1941). New Jersey has adopted the "most significant relationship" test of the Restatement of Conflict of Laws. *P. V. v. Camp Jaycee*, 197 N.J. 132, 142-43, 962 A.2d 453 (2008).[3] This analysis, which must be performed on an issue-by-issue basis, is a two-step process. *Id.* at 143. The first

---

[3] Until the New Jersey Supreme Court's decision in *Camp Jaycee*, New Jersey used the "governmental interest" analysis. The "most significant relationship" test now used "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration." *Camp Jaycee*, 197 N.J. at 142 n.4.

step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. *Id.* Second, if a conflict does exist, the Court must determine which state has the "most significant relationship" to the claim, by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action." *Nikolin v. Samsung Elecs. Am., Inc.*, Civ. No. 10-1456, 2010 U.S. Dist. LEXIS 110942, at *9 (D.N.J. Oct. 18, 2010).

Plaintiffs argue that it is premature to conduct a proper choice of law analysis, as the Court does not yet have a full factual record. Due to the factual inquiry that may be necessary to properly weigh the Restatement factors, "it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place." *In re Samsung DLP Television Class Action Litigation*, Civ. No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009). However, "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009). As such, courts in this Circuit have sometimes determined that the choice of law analysis in a putative class action can be done at the motion to dismiss stage. *See, e.g., Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 n.5 (3d Cir. 2010); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, Civ. No. 08-5380, 2010 U.S. Dist. LEXIS 34584, at *2 (D.N.J. Apr. 8, 2010); *Knox v. Samsung Electronics America, Inc.*, Civ. No. 08-4308, 2009 U.S. Dist. LEXIS 53685, at *2 (D.N.J. June 25, 2009). Other times, however, Courts in this District have deferred

6

the choice of law analysis until the class certification stage. *See Harper*, 595 F. Supp. 2d at 490-91; *In re Samsung*, 2009 WL 3584352, at *3; *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004); *In re Hypodermic Products Antitrust Litig.*, Civ. No. 05-1602, 2007 U.S. Dist. LEXIS 47438, at *16 (D.N.J. June 29, 2007).

In order to decide whether choice of law analysis is appropriate at the motion to dismiss stage in this particular case, the Court will follow the guidance provided in *Harper*, and determine whether the choice of law issues "require a full factual record" or not. 595 F. Supp. 2d at 491. Since choice of law analysis must be undertaken on an issue-by-issue basis, the Court will also determine whether or not to defer its choice of law decision on an issue-by-issue basis. The factual record available at this time may be full enough for certain choice of law determinations but not for others. Therefore, New Jersey's choice of law analysis will be addressed for each issue, and should the choice of law determination for that issue require a fuller factual record, the Court will defer its decision until such factual record is available.

    **D.**    **Preemption Under FIFRA**

Defendants' primary argument is that Plaintiffs' claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 ("FIFRA"), as Plaintiffs' claims for relief seek to alter the EPA-approved labels and package inserts of Defendants' Products. FIFRA provides a comprehensive scheme for regulating labels used on pesticides such as Defendants' Products. When a pesticide manufacturer applies

7

to the EPA for registration of a pesticide product, the manufacturer "must submit a proposed label to [the] EPA as well as certain supporting data." *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005) (citing 7 U.S.C. § 136a). The EPA then determines what warnings or precautions must appear on the product's label, and notifies the manufacturer of its labeling decision. 7 U.S.C. § 136a(c). Under FIFRA, the EPA is essentially given full control to regulate labels used on pesticides. While state governments can regulate pesticide labeling in conjunction with the federal government, they are expressly prohibited from "impos[ing] or continu[ing] in effect any requirements for labeling or packaging in addition to or different from" those established by the federal government. 7 U.S.C. § 136v(b). This includes "judge-made rules" in addition to statutes and regulations. *Bates*, 544 U.S. at 443. However, this preemption is limited in scope to judge-made requirements for "labeling or packaging," where said requirement is more than is required under FIFRA. *Id.* at 444.

The Supreme Court's decision in *Bates* instructs courts as to what types of claims are preempted by FIFRA. In *Bates*, the Supreme Court held that, "rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirement for labeling or packaging." 544 U.S. at 444 (finding that the petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty were not pre-empted). The Supreme Court further explained

8

that "the proper inquiry calls for an examination of the elements of the common-law duty at issue," not an examination of the potential effects of imposing those common law requirements. *Id.* at 445. The Third Circuit, in examining Congress's purpose in passing FIFRA, additionally explains that Congress meant only to provide uniformity in labeling, and did not intend "to regulate sales literature generally and the legal obligations that can arise therefrom." *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 217 (3d Cir. 2010).

If Plaintiffs' claims for (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) unjust enrichment, (4) violation of the NJCFA, and (5) violation of the ICFA amount to labeling requirements, they will be preempted by FIFRA. First, as to Count One, the Third Circuit has specifically held that FIFRA does not preempt claims based on breach of express warranty. *See Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 490 (3d Cir. 2006) (holding that "FIFRA does not preempt claims based on theories of strict liability, negligent testing, and breach of express warranty"). Simply because success on a breach of express warranty claim may lead to a label change by Defendants does not mean the claim imposes a "requirement" within the meaning of FIFRA's preemption provision. *Id.* Similarly, Plaintiffs' breach of implied warranty of merchantability claim is also not preempted, as it only requires that the product itself be merchantable, not that Defendants label their products in any particular way. The unjust enrichment claim, as well, alleges only that the product Plaintiffs received is not the product they bargained for, and does not address any

9

labeling requirement.  Essentially, the only claims in danger of preemption are Plaintiffs' claims under the NJCFA and the ICFA.[4]

The Third Circuit has recently addressed when a fraud claim under the NJCFA is preempted by FIFRA.  *See Indian Brand Farms*, 617 F.3d 207.[5]  In *Indian Brand Farms*, the Third Circuit found that the plaintiffs' claim was not preempted as it was based on statements made by the defendant in a marketing brochure, which did not qualify as "labeling" under FIFRA.  *Id.* at 218.  Plaintiffs' consumer fraud allegations here are that Defendants "misrepresented that their products were safe or safer than they actually are," and "made material omissions when they intentionally failed to inform Plaintiffs and consumers generally of the severity of side effects that may occur." (Compl. ¶ 78.)  Furthermore, Plaintiffs allege that "Defendants knew or should have known that the use of the unsafe pet Products causes and would cause serious and life threatening injuries to animals with greater severity and frequency than cited in its misleading advertising." (*Id.*)  Plaintiffs' Complaint refers to advertising on the Products' boxes, as well as statements made on Defendants' websites.  (Compl. ¶¶ 5, 13, 14, 35.)  Like in *Indian Farms*, taken as a whole, these allegations are not solely based on statements made on the

---

[4] Since the ICFA essentially mirrors the NJCFA, and since Plaintiffs' factual allegations underlying the two claims are essentially the same, the Court will address FIFRA preemption as to the two Counts simultaneously.

[5] This case reversed the District Court's grant of summary judgment in the case cited in Defendants' moving brief, *Indian Brand Farms, Inc. v. Novartis Crop Protection, Inc.*, Civ. No. 99-2118, 2007 U.S. Dist. LEXIS 94443 (D.N.J. Dec. 20, 2007).

10

Products' labels. Therefore, at least at this juncture, the Court finds Plaintiffs' claims are not preempted by FIFRA.[6]

### E. Count One – Breach of Express Warranty

Defendants contend that even if not preempted by FIFRA, Count One still fails to state a claim because Plaintiffs' allegations amount to no more than "puffery," and fail to allege any express warranty made by Defendants.

#### 1. Choice of Law

Under the first step of New Jersey's "most significant relationship" test, courts have agreed that state laws regarding breach of express warranty vary widely, especially as to whether reliance or privity of contract must be demonstrated to state such a claim. *See Payne v. FujiFilm U.S.A., Inc.*, Civ. No. 07-385, 2010 U.S. Dist. LEXIS 52808, at *27-28 (D.N.J. May 28, 2010). The state laws that may be applied are the laws of Plaintiffs' home states (California, New Jersey, and Pennsylvania), or the laws of the states where Defendants' headquarters are located (Arizona and Illinois). Though all these states have adopted the Uniform Commercial Code ("UCC"), "the law that has emerged thereunder is not pristinely uniform." *Arons v. Rite Aid Corp.*, No. L-4641-03, 2005 WL 975462, at *22 (N.J. Super. Law. Div. Mar. 23, 2005). At the very least, there appears to be a conflict between the law of New Jersey and Arizona regarding whether or not privity is required. *See Id.* at *23 (noting that Arizona law requires a variation of the

---

[6] Furthermore, since Defendants make no further formal arguments regarding dismissal of Counts Two (breach of implied warranty of merchantability), Four (violation of the NJCFA), or Five (violation of the ICFA), Defendants' motion to dismiss as to these Counts is denied.

privity requirement for a breach of express warranty claim, while New Jersey does not). Therefore, there is an actual conflict with regard to the breach of express warranty laws of the various states at issue.

Under the second step, since breach of express warranty claims sound in contract, courts look to Section 188 of the Restatement to determine which state's law applies. The Restatement requires courts to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 6; *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009). Additionally, courts look to the more general factors set forth in Section 6 of the Restatement: (1) interests of interstate comity, (2) interests of the parties, (3) interests underlying the field of law, (4) interests of judicial administration, and (5) competing interests of the states. Restatement (Second) of Conflict of Laws § 6; *P. V. v. Camp Jaycee*, 962 A.2d 453, 463 (N.J. 2008).

Applying the factors necessary to determine choice of law for a contract or quasi-contract claim is a very fact-intensive inquiry. Courts in this District have found in some cases that a choice of law inquiry as to contract-based claims is premature at the motion to dismiss stage. *See In re K-Dur Antitrust Litigation,* 338 F. Supp. 2d 517 (D.N.J. 2004) (postponing choice of law analysis, including as to a breach of contract claim, to class certification stage); *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 491

(D.N.J. 2009) (postponing choice of law analysis as to breach of express and implied warranty claims "until the parties present a factual record full enough"). The Court finds that, like in *Harper*, the factual record here is not yet full enough to make a choice of law determination as to Plaintiffs' breach of express warranty claim.[7] However, the Court must still determine whether Plaintiffs have succeeded in stating a claim in order for that claim to survive the pending motions to dismiss. Since Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard. *See Harper*, 595 F. Supp. 2d at 491 (examining the claims under the assumption that New Jersey law governs as that is what the plaintiffs presented, where the choice of law analysis was not yet proper).

### 2. Breach of Express Warranty

Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. *New Hope Pipe Liners*, 2009 U.S. Dist. LEXIS 111217, at *15; N.J. Stat. Ann. § 12A:2-313. However, "an affirmation

---

[7] The choice of law analysis for Count Two, breach of implied warranty of merchantability, is identical. Therefore, while Defendants argue in a footnote in their Reply Brief that Plaintiff Baldasano's claim for implied warranty fails due to lack of privity, whether or not privity is even required cannot be determined until a choice of law analysis has been applied. *See Payne v. FujiFilm U.S.A., Inc.*, Civ. No. 07-385, 2010 U.S. Dist. LEXIS 52808, at *27-28 (D.N.J. May 28, 2010) (state implied warranty laws differ as to whether privity is required or not).

13

merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." N.J. Stat. Ann. § 12A:2-313(2). Additionally, statements that are nothing more than mere puffery are not considered specific enough to create an express warranty. *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *48-49 (D.N.J. Sept. 10, 2009) (dismissing a breach of warranty claim based on Defendant's statement that HD DVD Players were for "Today, Tomorrow, and Beyond," since the statement is just "puffery"). Finally, courts have noted that "whether a given statement constitutes an express warranty is normally a question of fact for the jury." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at *13 (D.N.J. Sept. 3, 2008); *see also Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645, 801 A.2d 361 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact.").

Plaintiffs allege that Defendants made the following affirmations and promises:

(1) A statement on Farnam's website that it is "the brand pet owners trust to aid in the well-being of their pets." (Compl. ¶ 55; Ex. A.)

(2) A statement on Farnam and Wellmark's Products' boxes reading, "[s]ensitivities may occur after using ANY pesticide product for pets." (Compl. ¶ 55, 57; Exs. B, C.)

(3) A statement on Wellmark's website that, "[t]he amount of active ingredient in each dose is just enough to be effective against a flea, tick or other targeted pest. The pet, which is much larger than the targeted pest, should not be affected by this small amount of active ingredient. All of our products have been designed and tested for use on dogs and/or cats, knowing they will groom themselves." (Compl. ¶ 56; Ex. D.)

Defendants allege that these statements do not constitute express warranties, as they amount to no more than mere puffery. *See In Re Toshiba*, 2009 U.S. Dist. LEXIS 82833, at *48-*49 (statement that Defendant's HD DVD players were for "Today, Tomorrow and Beyond" did not create express warranty that they would essentially last forever). Defendants allege that the so-called express warranties alleged by Plaintiffs are simply generalized statements of opinion that are not specific enough to create an express warranty. However, the Court finds that Plaintiffs' allegations identify more than statements of mere puffery. Plaintiffs have pointed to specific affirmations or promises by Defendants regarding the safety of the use of their Products on pets, and therefore their breach of warranty claim survives a motion to dismiss. *See, e.g., Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 625-626 (E.D. Pa. 2008) (holding that Plaintiffs' showing that Defendant asserted in "various articles, conferences and journals presented to the medical community" that Paxil is safe and effective for children to use was sufficient for Plaintiffs' breach of express warranty claim to survive a motion for summary judgment).

At the motion to dismiss stage, it is enough that Plaintiffs provide more than "bald assertions," and identify specific affirmations by Defendant that could be found to constitute an express warranty. *Compare In re Ford Motor Co. E-350 Van*, 2008 U.S. Dist. LEXIS 73690, at *14-15 (finding that an allegation that Ford described a van as a "15-passenger" van survived a motion to dismiss, as such a statement could constitute an "objective representation warranting the van's design and safety"), *and Taylor v. JVC Ams. Corp.*, Civ. No. 07-4059, 2008 U.S. Dist. LEXIS 43215, at *15-16 (D.N.J. May 29, 2008) (allegation that television was sold as a "1080p" television but did not accept a 1080p signal found sufficient to survive motion to dismiss), *with Simmons v. Stryker Corp.*, Civ. No. 08-3451, 2008 U.S. Dist. LEXIS 93306, at *5 (D.N.J. Nov. 17, 2008) (dismissing a claim that was "devoid of any 'factual matter' to support the existence of an express warranty"), *and Parker v. Howmedica Osteonics Corp.*, Civ. No. 07-2400, 2008 U.S. Dist. LEXIS 2570, at *21 (D.N.J. Jan. 14, 2008) (general references to "press releases" and "assurances of safety," as opposed to specific statements, cannot survive a motion to dismiss), *and Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 U.S. Dist. LEXIS 60569, at *24-25 (N.D.Ill., July 25, 2008) (claim dismissed where plaintiff failed to specify any particular affirmation or promise by defendant). While the alleged warranties may later be found to be no more than "puffery," except in clear cases, this is normally a question of fact for the jury. *See Union Ink Co., Inc.*, 352 N.J. Super. at 645 (puffery issue is normally a question for the trier of fact); *cf. In re Toshiba*, 2009 U.S. Dist. LEXIS 82833, at *48-*49 (basing dismissal partially on the fact that even if the

16

alleged warranty was more than puffery, there was no allegation that the product failed to satisfy said warranty). As such, Defendants' motion to dismiss Count One is denied.

### F. Count Three – Unjust Enrichment

Finally, Defendants contend that even if Count Three is not preempted by FIFRA, it still fails to state a claim as Plaintiffs have not alleged the elements necessary to demonstrate unjust enrichment.[8]

#### 1. Choice of Law

Under the first step of New Jersey's "most significant relationship" test, the Court must determine whether there is an actual conflict between the laws of the different states. *P. V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (finding that any differences under the laws of the various states are "not material and do not create actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009) (concluding that "there are no actual conflicts among the laws of unjust enrichment"); *Pa. Employee, Benefit Trust Fund v. Zeneca, Inc.*, Civ. No. 05-75, 2010 WL 1816234, at *13 (D. Del. May 6, 2010) (Court determined that "the basic elements required under the relevant states' [unjust enrichment] laws do not create an actual conflict"); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (examining the unjust

---

[8] The Court notes that while Defendants mainly address Plaintiffs' unjust enrichment claim in their Reply Brief, Plaintiffs had taken the opportunity to challenge the argument in their Opposition Brief. (Defs.' Moving Br at 35 n.7; Pls.' Opp. Br. at 27-30; Defs.' Reply Br. at 13-14.)

enrichment laws of the 50 states and concluding that, "[a]lthough there are numerous permutations of the elements of the cause of action in the various states, there are few real differences"). Since no actual conflict exists, New Jersey law will be applied to all Plaintiffs' unjust enrichment claim.

### 2. Unjust Enrichment

Plaintiffs allege that since Defendants profited from the sale of their Products even though said Products caused Plaintiffs to incur damages, Defendants were unjustly enriched by those profits since Plaintiffs received no benefit in return. (Compl. ¶¶ 71-72.) Plaintiffs therefore allege that they are entitled to recover the amount of Defendants' unjust enrichment. (Compl. ¶ 75.) "Generally, to claim unjust enrichment, a plaintiff must allege that '(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'" *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at *63 (D.N.J. Sept. 3, 2008) (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)). Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that "the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." *Nelson v. Xacta 3000 Inc.*, Civ. No. 08-5426, 2009 U.S. Dist. LEXIS 109580, at *7 (D.N.J. Nov. 24, 2009) (citing *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009)); *see also Cooper v. Samsung Elec.*, Civ. No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *30

(D.N.J. Sept. 29, 2008) (dismissing an unjust enrichment claim where consumer's purchase was through a retailer, as there was no relationship conferring any direct benefit on the manufacturer). When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer. *See Alin v. Ain. Honda Motor Co., Inc.*, Civ. No. 08-4825, 2010 WL 1372308, at *14-15 (D.N.J. Mar. 31, 2010); *Nelson*, 2009 U.S. Dist. LEXIS 109580, at *7; *In Re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, Civ. No. 03-4558, 2010 WL 2813788, at *33 (D.N.J. July 9, 2010).

Since Plaintiffs have failed to allege that they purchased the Products directly from Defendants, they cannot rightfully expect any remuneration from Defendants, since they never directly conferred a benefit on Defendants. The facts alleged here are almost identical to the facts in *Cooper v. Samsung*: Plaintiffs are alleging that they are unsatisfied with purchases from retailers, yet they want their money returned by the manufacturer. 2008 U.S. Dist. LEXIS 75810, at *29-31. Applying the analysis provided in *Cooper*, this type of transaction does not constitute conferring a benefit on Defendants within the meaning of "unjust enrichment" under New Jersey doctrine. *Cooper*, 2008 U.S. Dist. LEXIS 75810, at *30. Since Plaintiffs have failed to allege a sufficiently direct relationship between themselves and Defendants, their unjust enrichment claim is dismissed without prejudice.[9]

---

[9] In case Plaintiffs can amend the Complaint to allege that they directly dealt with Defendants, Count Three is being dismissed without prejudice. Furthermore, the Court notes that it has not addressed Defendants' additional argument that a class cannot be certified based on the allegations in the Complaint. However, no motion for class certification has been made at this time, and therefore it is premature for the Court to consider these arguments.

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss as to Defendant Central Garden is **GRANTED**, and the Complaint is **DISMISSED** without prejudice as to Defendant Central Garden.  Defendants' motion to dismiss as to all Defendants is **GRANTED** as to Count Three, and Count Three is **DISMISSED** without prejudice.  Defendants' motion to dismiss is **DENIED** as to all other Counts.  An Order follows this Opinion.

      s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26, 2011**